JUDGE GRIESA

07 CV 3723

248-07/DPM/LJK
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
MAP Marine Limited
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Don P. Murnane, Jr. (DM 3639)
Lawrence J. Kahn (LK 5215)

MAY 1 0 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MAP MARINE LIMITED,

        Plaintiff,

-against-

JORDAN NATIONAL LINES FOR SHIP
OPERATIONS a/k/a JNLSO,

        Defendant.
------------------------------------------------------------x

07 CIV _____ ( )

**VERIFIED COMPLAINT**

Plaintiff MAP MARINE LIMITED (hereinafter, "MAP"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant JORDAN NATIONAL LINES FOR SHIP OPERATIONS a/k/a JNLSO (hereinafter, "JNLSO") alleges upon information and belief as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breaches of a maritime contract of charter party. The case also falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 and / or the Arbitration Act, 9 U.S.C. §1 *et seq.* and /or §201 *et seq.*

2. At all times relevant hereto, MAP was and still is a business entity duly organized and existing under the laws of the Cayman Islands, a foreign country, with an office in care of its agents, Pacific Rim Shipping, Pty Ltd., Level 9, 50 Market Street, Melbourne 3000, Australia.

3. At all times relevant hereto, JNLSO was and still is a business entity organized and existing under the laws of Jordan, a foreign country, with an office and place of business at PO Box 5406, Amman, Jordan.

4. On or about November 16, 2006, MAP, as disponent owner of the M/V GRAND ANEMI, entered into a charter party agreement on an amended NYPE Form with JNLSO for a charter of the vessel for a period of "one time trip, duration about 65-80 days" at a daily hire rate of $37,500.

5. MAP performed all of its obligations under the charter.

**SPEED AND CONSUMPTION CLAIM**

6. The charter provision relating to speed and consumption of bunkers was as follows:

> SPEED/CONS
>
> ABT 13 KNOTS ON ABT 33 MT BALLAST/ABT 35 MT LADEN IFO (180 CST) + ABT 2.5 MT MDO (DMB), AT SEA IN GOOD WEATHER CONDITIONS AND UP TO AND INCLUDING BEAUFORT FORCE 4/DOUGLAS SS3, AND WITH NO ADVERSE CURRENTS NOR SWELLS.
> IN PORT 2.5 MT MDO (DMB) PER DAY OF 24 HRS.
> \* \* \*
> ALL DETAILS ABOUT AND GIVEN IN GOOD FAITH BUT WITHOUT GUARANTEE

7. As a result of the provision being given in good faith but without guarantee, there was no speed or consumption warranty in the charter party, the only obligation being on MAP to genuinely believe in the accuracy of the statement at the time of entering into the contract.

8. Pursuant to the orders of Charterer JNLSO, the vessel proceeded on a voyage from Qinhuangdao to Portland between November 23 and December 17, 2006.

9. Following completion of that voyage, JNLSO submitted a speed and performance claim based on a report prepared by the Danish Meteorological Institute that alleged a loss of time of 43.90 hours and an over-consumption of IFO fuel of 24.70 MT and of MDO fuel of 1.14 MT. There was no allegation made of bad faith on the part of MAP and on that basis, the deduction from hire on the basis of the speed and performance claim was wrongful. Further, the Danish Meteorological Institute report calculated the alleged losses based on, among other things, an "average weather factor" and an "average current factor". That is contrary to well-established authority which requires speed and performance to be calculated in good weather conditions to determine if there is a breach.

10. While in good weather conditions, the vessel met or bettered its speed and consumption warranty and so, if there was a speed and performance warranty in the charter party (which is denied), it was complied with.

11. JNLSO, on the basis of the Danish Meteorological Institute report, withheld hire of $77,713.15.

12. This withholding of hire was contrary to authority and was, in any event, based on an incorrect method for determining whether the vessel had met its speed and consumption warranty and was wrongful and a breach of the charter.

## UNPAID HIRE

13. JNLSO redelivered the vessel on March 18, 2007 at 0106 hours.

14. JNLSO did not pay hire, though, for the period from March 15, 2007 at 0700 through the date and time of redelivery, constituting 2.7125 days.

15. JNLSO was responsible for paying charter hire until the vessel was redelivered.

16. JNLSO failed to pay hire for the last 2.7125 days that the vessel was under charter to it, and owes MAP charter hire for that period, amounting to $101,718.75.

17. JNLSO's failure to pay charter hire in full and when due is a breach of the charter.

## UNPAID BUNKERS

18. The charter required that JNLSO redeliver the vessel with about the same amount of fuel (IFO and MDO) on board as when JNLSO took over the charter.

19. The bunkers on delivery were 1,293 MT of IFO and 23 MT of MDO.

20. JNLSO deducted 1,293 MT of IFO and 123 MT of MDO as being the estimated bunkers on board on redelivery.

21. The actual bunkers on redelivery, though, were 1,278.3 MT of IFO and 74 MT of MDO.

22. As a result, JNLSO's deduction was excessive in the amount of 14.70 MT of IFO and 49 MT of MDO.

23. Based on charter prices of $340/MT for IFO and $635/MT for MDO, the credit due to MAP for bunkers by $4,998 for the IFO and $31,115 for the MDO, resulting in a total of $36,113.

24. The charter only requires that the quantities of IFO and MDO be "about" the same on delivery as on redelivery. A variation of 5% above or below is typically permitted.

25. Clearly, the difference in the IFO is within the 5% margin and presents no problem.

26. The MDO, however, should not have been redelivered at a quantity of more than 24.15 MT. (i.e., 23 MT plus 5%).

27. The MDO at redelivery, at 74 MT, was excessive by 49.85 MT.

28. The charter price for MDO was $635/MT, but the market value of MDO was only about $505/MT.

29. If MAP pays charter prices due to the excess delivery of MDO, it suffers a loss of $130/MT, and on that basis, MAP's damages as a result of JNLSO's breach by redelivering the vessel with excess MDO is $6,480.50.

30. In all, JNLSO's breaches have resulted in damages to MAP in the amount of $221,276.96.

31. On or about May 7, 2007, MAP received a further sum of $117,043.01 such that the amount due to MAP was reduced to $104,233.95.

32. The charter specifically provides for the resolution of all disputes by arbitration at London, England, with English law to apply. MAP specifically reserves its right to arbitrate the merits of its dispute with JNLSO pursuant to the terms of the charter and London arbitration proceedings have already been commenced by MAP.

33. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, and the cost of the arbitration, all of which constitutes a part of the Plaintiff's claim.

34. MAP estimates that its attorneys fees, costs, disbursements and the cost of the arbitration will be approximately $35,000.

35. Interest is also typically awarded, at the rate of 7%, compounded quarterly, and the typical time taken from commencement of arbitration through entry of judgment on an award is approximately 3 years. Accordingly, MAP estimates that it will be awarded approximately $24,123.38 in interest.

36. In all, JNLSO owes MAP damages in the amount of $163,357.33, as near as presently may be estimated, which amount includes awardable costs, fees, and interest in the arbitration, no part of which has been paid by JNLSO. MAP specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure MAP.

37. After investigation, Defendant JNLSO cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-

charter hire, of, belonging to, due or for the benefit of Defendant ("ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

**W H E R E F O R E**, Plaintiff MAP prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant JNLSO, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim plus interest, costs and attorneys' fees;

b. That if the Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant as described herein, up to and including the amount of the claim of **$163,357.33** be restrained and attached, including, but not limited to any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held or being transferred to, from or for the benefit of the Defendant (collectively hereinafter "ASSETS") including, but not limited to such ASSETS as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through or within the possession, custody or control of banking institutions and any other garnishees upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

c. That the Court enter an order directing Defendant to appear and respond in arbitration as required, or, to the extent an award is rendered against the Defendant, to confirm that award as a judgment of this Court; and

d. That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       May 10, 2007

                      FREEHILL HOGAN & MAHAR, LLP
                      Attorneys for Plaintiff
                      MAP Marine Limited

                      By: _____
                      Don P. Murnane, Jr. (DM 3639)
                      Lawrence J. Kahn (LK 5215)
                      80 Pine Street
                      New York, NY 10005

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

Lawrence J. Kahn, being duly sworn, deposes and says:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for the Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications and documents provided by our client regarding the claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

Lawrence J. Kahn (LK 5215)

Sworn to before me this
10 day of May, 2007

Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08